UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-272-H

MARILEE GREENE, ELAYNE HARKNESS
and BEVERLY HARKNESS                                                                PLAINTIFFS

V.

CLASS ACT FEDERAL CREDIT UNION,
LYNN M. HUETHER, ROBERT RODOSKY
and UNKNOWN DEFENDANTS 1-3                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Marilee Greene, Elayne Harkness and Beverly Harkness (collectively, the "Plaintiffs") dispute the decision of the Class Act Federal Credit Union (the "Defendants") to alter their health insurance benefits. After filing claims in state court, Defendants removed to federal court on the basis of pre-emption under the Employment Retirement Income Security Act of 1974 ("ERISA"). Now, each side has moved for summary judgment. The answer to the issue at hand appears to be well settled.

I.

Each of the Plaintiffs is a retired, former employee of Class Act Federal Credit Union. Marilee Greene served as the CEO of Class Act Federal Credit Union and retired in 1999. Elayne Harkness served as Executive Vice President for lending services and member services until retiring in 2001. Beverly Harkness served as the University of Louisville Branch Manager for the Credit Union until her retirement in 2004. Prior to, and into their retirement, Defendants'

ERISA plan provided that each would be provided health insurance coverage benefits, or Medicare supplement premium benefits. Coverage was to continue as long as the retired employee lived, and paid the premiums as required pursuant to the personnel policy then in effect.

The personnel policies in effect at the time of each of the Plaintiffs' retirement became effective on September 24, 1996. Health insurance coverage is found in the personnel policies Manual. It provides in pertinent part as follows:

> "D. If an employee is placed on retirement then:
>
> 1. A portion of the monthly health or Medicare supplement premium will be paid by the credit union for employees that retire with long term continuous Credit Union Service, as follows:
>
>    a. Less than 15 years = no coverage;
>    b. 15 years < 20 years = 50% of monthly premium paid;
>    c. 20 years < 27 years = 75% of monthly premium paid;
>    d. 27 years or more = 100% of monthly premium paid.
>
> 2. Health insurance, if available, from the provider, will be offered to retirees of the credit union beyond the mandatory COBRA period under D1 above." (pp.D72-73.)

The Manual further provided that it could be revised at any time, without advance notice:

> [A]ll of the Credit Union's policies are granted at the discretion of the Board of Directors of this Credit Union ("Directors") and are not contractual in nature. The Directors retain the right to change, modify, suspend, interpret or cancel, in whole or in part, any of the published or unpublished Policies, and their accompanying procedures, without advance notice, in its sole discretion, without having to give cause or justification or consideration to any employee.

2

As employees of the Credit Union, Plaintiffs received copies of the Manual and presumably were aware of its contents.

During a review process, Defendants concluded that it should not provide continuing health care coverage to its retirees. On or about December 17, 2004, Defendants advised Plaintiffs of the change in their retiree insurance coverage. The notice stated that the Plaintiffs would no longer be entitled to ongoing lifetime health insurance coverage. Defendants offered Plaintiffs the legally required COBRA continuation coverage for an 18-month period retroactive to October 1, 2004; continuing dental coverage for an 18-month period beginning January 1, 2005; and continued payment for a portion of each retiree's monthly single health insurance premium during the COBRA coverage.

The minutes of the December Board of Directors meeting reflect that the Personnel Committee of the Board reported to the Board that health insurance for retirees is not appropriate pursuant to insurance industry guidelines. The Committee reported that

> "During the renewal process it was discovered that retirees are not eligible for coverage under the Anthem contract. Industry guidelines do not allow for retirees to be carried on group plans with less than 50 participants. The Committee met to discuss this finding and recommended that the coverage for retirees as outlined in the Employee Handbook be revised to provide health insurance benefits under COBRA. The guidelines have been amended to provide a portion of the COBRA premium as a benefit to retirees based upon years of service. Anthem has also agreed to provide insurance coverage under COBRA for the current retirees affected by this mandated change." (D359.)

The Board of Directors approved the changes to the Manual at its subsequent January 26, 2005, meeting.

After Plaintiffs received notice of the changes, they attempted to persuade Defendants to

revisit the issue and to reinstate benefits. Plaintiffs consulted with counsel, and interacted or negotiated with Defendants throughout calendar year 2005 in an effort to "resurrect" health insurance coverage previously provided. The interplay between Plaintiffs and the Credit Union continued during calendar year 2005 and into 2006. At an open annual membership meeting of the Credit Union on March 15, 2006, Defendants allowed anyone present to speak regarding the change in the retirees health insurance benefits, save for COBRA provisions.

On April 25, 2006, the Committee met to discuss the comments made at the Annual Meeting. The Committee considered whether, in light of all the information before it, the Manual reflects the consensus of the Committee and the Board, and whether the Credit Union could afford to purchase individual health insurance policies for its retirees. After discussion and consideration, the Committee reported to the Board that the Credit Union cannot afford to provide individual retiree health insurance policies, and that the current version of the Manual reflects the consensus of the Committee and the Board with respect to retiree health insurance. The Board voted at its April 25, 2006 meeting to accept the Committee's report. This lawsuit followed.

At an early pretrial conference, the Court asked the parties to address two issues which could help resolve the case one way or another: (1) whether Defendants had the authority under ERISA and any other relevant law to revise the Manual; and (2) if so, whether Defendants made such revisions properly.

II.

As a general rule under ERISA, employee welfare benefits, such as health care benefits, do not vest. *Gill v. Moco Thermal Ind. Inc.*, 981 F.2d 858, 860 (6th Cir. 1992). If the ERISA

plan so provides, an employer may amend or even terminate those benefits in accordance with the Plan. *Id. See also Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 248 (6th Cir. 1996) ("Until benefits have vested, an employer may modify or terminate them . . . ."). The Manual in effect at the time Plaintiffs retired provided that Defendants' Board of Directors had the discretion to change, modify or even cancel the policies contained in it. The Manual contained no provisions suggesting in any way that Plaintiffs' benefits were vested. Plaintiffs do not make a serious argument for any other result.

The only remaining question, therefore, is whether Defendants made the changes properly. The administrative record reflects that the Board of Directors made its initial decision to alter benefits on January 26, 2005, after having discussed the issue on December 20, 2004. Thereafter, the Board allowed further discussion at its annual meeting on March 15, 2006. Thereafter, on April 25, 2006, the Board reconsidered the issue and confirmed its original decision.

Once again, Plaintiffs do not make a serious argument that the procedures followed were improper. Although the Board's diligence is not precisely at issue, there seems little question that it acted carefully and on the basis of adequate professional advice. Plaintiffs were given an opportunity to present their case at an annual meeting, after which the Board reconsidered its decision. Plaintiffs presented no example that Defendants violated any provision of its own plan or any provision of ERISA while amending the Manual.

As everyone concedes, Plaintiffs' state law claims are pre-empted by ERISA. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment is DENIED.

5

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is SUSTAINED and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record